FREEMAN F. GOODENOW *et al. vs.* DANIEL ALLEN *et al.*

Androscoggin. Decided June 11, 1878.

*Landlord and tenant.*

The plaintiffs, being tenants at will of a store owned by the defendants as real estate, mortgaged to the defendants a building, annexed to and connected with the store, which was owned by the plaintiffs as personal property; *Held,* that a description of the mortgaged property as " a building and appurtenances," would not have the effect to surrender or transfer to the defendants the right which the plaintiffs had to occupy the store.

The letting of real estate to a person on a verbal agreement that he shall pay rent while he remains in possession, constitutes a tenancy at will.

Whether a tenancy at will, under a verbal lease, can be determined in this state after a time fixed and limited by agreement or upon the happening of a certain event, the statute providing that tenancies at will may be determined by thirty days notice " and not otherwise," *quære.*

ON EXCEPTIONS.

TRESPASS, for breaking and entering the plaintiffs' store in Lewiston and holding them out from September 11, 1876, to December 27, 1876, and breaking up their business. Plea, general issue.

The defendants were lessees of a lot of twenty-five feet front by one hundred feet, with store thereon fronting on Lisbon street, and extending back about one-half the length of the lot, the lease running from April 1, 1872, to April 1, 1877, at a quarterly rental of $87.50. The defendants, while occupying under their lease, erected another building in the rear of the store of the

same width, covering the rest of the lot, and joined and nailed it to the store, and occupied the two buildings thus united for a furniture manufactory and sale store, with an upholstery room, paint and carpenter shops connected; and there was evidence that the buildings could not be used separately, there being no way of entering the rear building except through the one in front.

The defendants, in November, 1875, sold their stock in trade in the two buildings, together with the rear building erected by them, to the plaintiffs for $8,822, calling the rear building $1,000 and the stock $7,822, and gave the plaintiffs leave to occupy both buildings while they remained. In payment of $4,750, the plaintiffs gave their notes to the defendants, secured by mortgage on the stock and rear building with appurtenances, with a provision therein " that, if the said stock shall at any time be reduced in value to a less amount than $6,500, the said Allen & Maxwell may enter and take possession of same without notice. Provided, also, that it shall and may be lawful for said Freeman F. and Frank to continue in possession of said property without denial or interruption by said Allen & Maxwell until condition broken."

September 11, 1876, after condition broken, a $500 note due August 17, 1876, not being paid, the defendants entered and took the stock of goods upon a replevin writ, then amounting to only $4,400, and took possession of the store, the front and rear buildings, under their mortgage, and held the plaintiffs out, the alleged trespass. The plaintiffs had the permission of the defendants, November 15, 1875, to occupy the store by paying rent while they remained, and the plaintiffs paid the rent to the first lessor, Whitman, to July 1, 1876, only, and after that the defendants paid it.

The defendants justified under their mortgage and claimed the right to enter and take possession of both buildings, and that the plaintiffs were tenants at sufferance after breach.

The presiding justice ruled that the mortgage to the defendants gave them no right to enter and take possession of the real estate, and hold the plaintiffs out ; that the word "appurtenances" in the mortgage could give no such right, because real estate would not pass as appurtenant to personal property ; that in his opinion the relation of plaintiffs to defendants was that of tenants at will,

it being admitted that the plaintiffs took possession of the premises under an oral agreement with the defendants, and occupied in subordination to their title. The defendants then claimed that under the relation of tenants at will there was evidence by the mortgage, the conduct of the parties, the subject matter of the transaction, the nature and value of the furniture and necessity of keeping it in this store, which after breach of condition of mortgage might amount to mutual consent to terminate the tenancy at will, and plaintiffs would be tenants at sufferance and defendants would have the right to enter and occupy the buildings and dispossess the plaintiffs; but the presiding justice ruled otherwise, and instructed the jury that there was no evidence in the case which would justify them in finding that the tenancy at will was terminated by mutual consent. Verdict for plaintiffs $350; and the defendants alleged exceptions.

*M. T. Ludden*, for the defendants.

*W. P. Frye, J. B. Cotton & W. H. White*, for the plaintiffs.

PETERS, J. The plaintiffs were tenants at will under the defendants (lessees under others) of a lot of land with a store upon it. They were themselves the owners of another building (personal property) situated on the same land, affixed to the rear of the store in such a manner that the two buildings could be used as one. They mortgaged their own building to the defendants, describing it as personal property and as a "building and appurtenances."

A question arose at the trial, whether the word "appurtenances" carried with the title of the building such rights as the plaintiffs had as tenants at will of the store adjoining. The defendants do not set up that the store itself, being real property, could be regarded as appurtenant to the building mortgaged to them, but they contend that the plaintiffs' right of occupancy as tenants at will of the store could be so regarded. We think not. Suppose that the plaintiffs had been the owners of the fee of all the land and the erections upon it, and had sold the building to the defendants outright as personal property, describing it as here described. What would have passed to the defendants under the

words " building and appurtenances " in that case ? We do not see why in the case supposed the defendants would not have the same legal right to use and occupy the real estate that they would have here. How long in such case would they be entitled to the use of the store as an appurtenance to the building in its rear, and for what consideration ? It is evident that no consideration would have to be paid for it, because the " appurtenances," whatever they are, were bought and paid for in the purchase of the building. Nor do we see why, if they could claim the exclusive use of the store for three and a half months (as here), they might not have the same right for as many years or for all time. The supposed case demonstrates the fallacy of this point of the defendants more fully than the real case does, but in legal effect the two cases are the same. The cases referred to by the counsel for the defendants, where property has been sold under a general description as " a house " or " farm " or " mill " or " wharf " or the like, do not apply in this case, because the property here was sold as personal and in those cases as real estate.

What does the word " appurtenances " mean as used in the mortgage ? The defendants say it must mean something. It may mean that the defendants (mortgagees) should for a reasonable time have reasonable modes of access to the building ; or it may have been designed to cover fixtures within it ; or it may be a word, as is sometimes so, used without any definite purpose or meaning whatever. It would probably puzzle the person who drafted the instrument to decide what was intended by it. It is not required to ascertain the meaning of a word which had no meaning in the mind of the person expressing it. Upon this branch of the case see *Warren* v. *Blake*, 54 Maine, 276 ; and cases there cited.

It was not, however, admitted that the plaintiffs were tenants at will of the store. We have no doubt that they were. They were let into possession upon an agreement to pay rent while they remained. The occupancy was to be for an uncertain and indefinite time. Those elements most perfectly constitute an estate at will at the common law. It was to be a possession during the joint wills of the parties. It could be determined by the will of

either party. Our statute allows such a tenancy to be determined at the will of either party, but after a certain length of notice has been given.

The defendants seek to avoid the result that follows from the relation of a tenancy at will between the parties, upon another ground. They contend that a tenancy at will created by parol may be a conditional estate, to be determined after a time fixed and limited by agreement, or upon the happening of a certain event, so that the tenancy will come to an end without notice at the expiration of the time or the happening of the event. This has been so decided in Massachusetts and elsewhere. See 1 Wash. Real Prop. book 1, c. 11, § 41; and note. But whether it could be so held in this state, where the statute provides that tenancies at will may be determined by thirty days notice, " and not otherwise except by mutual consent," we do not consider ourselves called upon to determine, because the facts of this case cannot present such a question.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.